HENNEBIQUE CONST. CO. v. ARMORED CONCRETE CONST. CO. OF BALTIMORE et al.

(Circuit Court, D. Maryland. January 28, 1908.)

PATENTS—INFRINGEMENT—REINFORCED CEMENT GIRDERS.

The Hennebique patent, No. 611,907, for a cement joist or girder strengthened by iron rods or bars, is limited to a construction in a continuous girder, in which the strengthening rods in each span extend over the intermediate support and into the next span, so as to increase the strength of the girder next to such points of support. So construed, held not infringed.

In Equity. On final hearing.

Wm. B. Whitney, for complainant.

Charles H. Knapp, Arthur Stewart, and W. Cabell Bruce, for respondents.

MORRIS, District Judge. This is a bill of complaint, in usual form, charging infringement of a patent belonging to complainant, and praying for an injunction and an account. The bill alleges that, prior to December 29, 1897, Francois Hennebique, a citizen of France, was the inventor of certain improvements in the construction of joists,

girders, and the like, and that upon his application, filed December 29, 1897, there was granted to him, in due form of law, patent of the United States, dated October, 1898, No. 611,907, for improvements in the construction of joists, girders, and the like of cement strengthened with iron. This patent, by valid assignment, has become the property of the complainant, the Hennebique Construction Company. The specifications and claims of the patent are as follows:

"The use of strengthened beton in buildings has within recent years greatly developed. It has been thought possible, by mixing beton and iron or steel, to replace the purely metallic elements of building construction by parts equally incombustible, but lighter, and more simply and rapidly made. In any case the mixture of cement or hydraulic lime, which resists perfectly compression, with iron or steel, which more particularly resists tension and flexion, has not hitherto been capable of being carried out in a judicious and rational manner. By arranging at useful points in a mass of beton of suitable form longitudinal bars of iron of a given shape in order to constitute the tension chord, by distributing them in the mass in a judicious manner in order that the whole mass of iron and beton may have at every point of the piece formed the desired resistance to flexion and tension, and by further connecting the longitudinal bars by brace pieces or stirrups of suitable form, I have succeeded in producing the practical joists, girders, and the like which form the object of my present invention.

"The invention is illustrated in the accompanying drawings, in which I have shown diagrammatically in Figure 1 a practical continuous joist or girder of beton strengthened with iron arranged according to these principles. Figure 2 is a detail perspective view of one of the stirrup pieces. Figure 3 is a section on line, s, t, of Figure 1. Figure 4 is a sectional perspective on line, x, y, of Figure 3; the longitudinal half of the girder being supposed to be removed. Figure 5 is a detail illustrating the construction at the point of passing an intermediate support. This joist, incased or built in at one of its ends, A, is placed on a series of intermediate supports, C. The characteristic of the metallic core or strengthening is the addition to longitudinal bars, 1, arranged parallel to the lower side of the joist, of inwardly-bent bars, 2, 2', 2'', 2''', arranged in the same vertical plane. These bars are parallel to the bars, 1, in the mean central part of the joist; that is to say, in the part where the effects of tension are almost nothing. They are placed parallel to the bars, 1, and in their vicinity they double the resistance of the latter to tension. They are carried by the same supports or stirrups, 3, and these latter thus connect the chord of tension formed by the bars with the chord of compression formed by the beton. One of these stirrup pieces is shown in perspective in Figure 2. It is formed of a band of sheet iron of U shape having straight arms, terminated by a little hook, which facilitates their fixing in the beton. These straight stirrup pieces play in the joist of strengthened beton the part which the suspension rods play in the trussing of metallic girders.

"As in the extreme parts of the girder the tension action increases in proportion as the wall, A, and the support, C, are approached, I raise the bar, 2. The inclined arms, 2', of this bar, are connected with the horizontal bar, 1, by stirrup pieces, 3, approached more and more closely together. I thus form a triangle of resistance, the apex of which is at the point of divergence of the bars, 2'. This triangle, in consequence of the stirrup pieces, 3, being progressively placed nearer one another, and of the growing mass of beton which it incloses between the bars, 1 and 2', offers a proportionate increasing resistance to the tension action. Each bar, 2, is inclined upwardly at 2', runs horizontally, as shown at 2'', and is extended beyond the incline of the adjacent bar, as shown at 2'''. At the point where the continuous girder passes on to an intermediate support, C, I prolong the bar, 2'', to 2''', in the adjoining compartment or bay, which is thereby strengthened; and in order to insure that the reaction of the beton of this prolongation shall not raise the latter I crown it with reversed stirrups, a, which maintain the bar perfectly firm.

"Figure 5 shows in detail the passing over an intermediate support, C. The crossing of the arms, 2''', consolidates the girder in a practical manner on

the support, C, where the bending strain is greatest. It will be seen, therefore, that owing to the addition of a single bar, 2, the arms, 2', 2'', 2''', of which are suitably inclined, connected, and arranged in the beton, and, further, owing to the rational distribution of the straight stirrup, 3, it is possible to construct girders resistant in all their parts in a perfect manner to the effects of tension, the effects of compression, the breaking effects, and the bending effect, while reducing to a minimum the quantity of iron employed, and suppressing or dispensing with iron in the part under compression, thereby avoiding between the irons, 1 and 2, any cross-fastening by inclined stirrups or by wire lattice work. It is needless to state that the principles herein described may be applied to the manufacture of any suitable girders or joists for ceilings or floors, and in fact, to any constructions formed of beton strengthened with metal, which, as regards the strains which they will support, may be likened to girders placed on supports or incased in masonry. It is also understood that according to the dimensions of the girder, the transverse section of which is not necessarily rectangular, the number of bars, 1 and 2, placed in the same vertical plane, may vary.

"Having now particularly described and ascertained the nature of my said invention and in what manner the same is to be performed, I declare that what I claim is:

"1. In the construction of joists, girders, and the like of cement strengthened with iron or the like, the inwardly-bent bars, 2, 2', 2'', 2''', of which the central branch, 2, is horizontal and arranged in the plane of the bar, 1, which forms the chord of tension of the girder, and of which the arms, 2', are always raised in the same vertical plane and in the direction of the point where they are fitted into the wall, A, or on the supports, C, in order to obtain a better resistance to the increasing breaking strain, while the branch, 2'', is extended into the next span, substantially as described.

"2. In the construction of joists, girders, or the like of the kind described, the straight stirrup pieces, 3, of hoop iron in a U form for connecting the bars, 1, and the inwardly-bent bars, 2, 2', 2'', 2''', the said stirrup pieces being distributed in the girder, substantially as hereinbefore described."

In the strengthened concrete girder of the Hennebique patent, straight rods are imbedded in the lower side of the cement girder, and other rods parallel to them are imbedded in the same horizontal plane of the girder for some distance on each side of the point midway between the points of support; but then these other rods begin to gradually rise, being upwardly bent, to near the upper surfaces of the cement girder, and then are continued over the support into the next span for some distance ending at 2''', as shown in the drawings. This distance of extension into the next span is represented in the drawings of the patent as being at least one-seventh of the whole width of the span between the two points of support. Obviously this method of construction is applicable to continuous girders; that is to say, girders which are continuous over one or more intermediate supports, and which are thereby divided into two or more consecutive spans. In such a girder the tensile strain, which tends to pull apart the lower side of the beam, will be greatest midway between the supports, and for that reason the parallel strengthening rods are placed there; but near the supports it is the upper portion of the girder, the top fibers, that are in tension and need the strengthening of the iron rods which have been brought up to the top and carried over each support into the next span, so that there is, at the points of greatest stress, near the supports, a double number of rods in each span to give resistance to the stress which at these places tend to bend the girders when the load is applied. As Mr. Hennebique, in his testimony, explains, if the weight

is too great for the resistance of the single rods at the top of the girder, and the rods are not extended into the adjoining span, then the weight will "produce destructive deformation of the concrete of the girder."

The testimony and the reasoning of Mr. Hennebique, as well as the usual meaning of those words, convey to me that the words "bay" or "span" or "compartment" in the patent mean the clear open space between the faces of the adjoining supporting columns. Especially is this so with respect to the building in question in this case, in which the supports are walls which extend above the points entered by the girders, so that the superimposed weight of the wall rests upon the girder and would prevent its yielding at that point to the stress of the load, to which it could only yield at some point in the bay outside of the support. The scientific reasons which explain why this arrangement of the iron rods places them just where they are needed and dispenses with their use where they are not required, and therefore results in an economical use of the material of which the rods are made, are most learnedly shown in the testimony of the expert witnesses and in the briefs of counsel. But, after all, it is the actual construction covered by the patent with which this litigation is concerned, and that construction, I think, is clearly indicated by the specifications and claims of the patent to require that the upwardly bent rod shall pass over the supporting column into the next adjoining span or compartment. It is stated in the specifications:

"At the point where the continuous girder passes on to an intermediate support, C, I prolong the bar, 2", to 2''', in the adjoining compartment or bay, which is thereby strengthened. * * * The crossing of the arms, 2''', consolidates the girder in a practical manner on support, C, where the strain is the greatest."

The defendants, in support of their defense of noninfringement, contend that in the building erected by them, which is complained of, they did not use complainant's patented construction; that the plans and the calculations for the strength of the irons were not based on the calculations proper to be used in the Hennebique construction, and the rods were not designed to pass over and did not pass over into the adjoining compartments or bays, and the ends did not cross each other, as shown at 2''' in the patent. The defendants contend that the rods used in the building extended no further than the center of the supporting column, and if, in some few cases, they did extend a few inches further, it was only by accident, and they never extended into the next bay, so as to obtain any of the benefits claimed by the patentee for his construction. This is a question of fact to be determined from the testimony, and my conclusion is that the testimony fully supports the contention of the defendants.

It is urged, however, that, even if this be conceded, yet the defendants are to be held to have used the patented construction and have attempted to evade it by constructing it imperfectly, so that its utility is diminished. If the real, substantive invention of the Hennebique patent consists in the overlapping of the ends of the rods of one span with the ends of the rods of the next span, so as to give the resistance of the double rods to the shearing stress, which is greatest on the cc-

ment girder at a short distance from the face of the support, then it results that rods, the ends of which simply meet in the support, and do not cross and overlap beyond the faces of the support, do not infringe Mr. Hennebique's real invention, and do not infringe the claims granted to him in his patent.

It is urged on behalf of the complainant that the claims of the Hennebique patent are not solely for a combination of all the elements of the claim, and that the patent is infringed by the use of the bent bar with the stirrup pieces. Considering the prior art, as disclosed by the exhibits and testimony, I think it fairly appears that Mr. Hennebique was not the first to use the stirrup pieces, or similar metal ligatures, or a bent bar, and therefore he cannot claim to be the inventor of these devices, but that the invention of his patent must be limited to the combination which he has described of the bent bar and the stirrups with the bent bar extending into the next compartment in such manner as to produce the beneficial results obtained by the overlapping.

Being of opinion that the defense of noninfringement has been sustained, and for that reason that the bill of complaint should be dismissed, I do not enter upon the question of the effect of the delay of Mr. Hennebique in applying for the United States patent, or of the prior printed publications of his invention.